# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES TODD SMITH,<br>    Plaintiff,<br><br>          v.<br><br>GUERILLA UNION, INC., et al.,<br>    Defendants. | CV 18-9902 DSF (AGRx)<br><br>Order GRANTING Plaintiff's Motion for Default Judgment (Dkt. 16) |

    Plaintiff James Todd Smith moves for default judgment against Defendant Guerilla Union, Inc., a suspended California corporation. Dkt. 16 (Mot.). The Court deems this matter appropriate for decision without oral argument. See Fed. R. Civ. P. 78; Local Rule 7-15. The hearing set for April 15, 2019 is removed from the Court's calendar. The motion is GRANTED.

## I. Background

    Plaintiff, professionally known as LL Cool J, is a rapper, musician, actor, and author. Dkt. 11, First Am. Compl. (FAC), ¶ 7. In 1985, Plaintiff released Radio, his debut album, which included the song "Rock the Bells." Id. Radio was certified Platinum by the Recording Industry Association of America, and "Rock the Bells" was included on several of Plaintiff's compilation albums. Id. In approximately January 1998, Plaintiff formed Rock the Bells Entertainment, Inc., a New York corporation. Id. In March 2018, Plaintiff launched ROCK THE BELLS RADIO, a

classic hip-hop channel on the satellite radio platform SiriusXM. Id. ¶ 8, Ex. C.

Plaintiff has registered and filed applications to register the marks ROCK THE BELLS, ROCK THE BELLS MUSIC GROUP, and ROCK THE BELLS RADIO (collectively, the Marks) for a wide array of goods and services with the U.S. Patent & Trademark Office (USPTO). Id. ¶ 10.

Defendant was a concert promoter and held a series of concerts featuring hip hop artists under the ROCK THE BELLS label. Id. ¶¶ 11-13. Defendant owned three registrations of ROCK THE BELLS on the principal register of the USPTO, all of which have been canceled. Id. ¶¶ 14-22.

Although Plaintiff has successfully canceled Defendant's ROCK THE BELLS registrations, and Defendant has ceased to use the Marks for music festivals, Defendant continues to make limited, passive use of the Marks without Plaintiff's permission or authorization. Id. ¶ 24. Specifically, Defendant continues to maintain a website on the domain name <rockthebells.net> (the Domain Name). Defendant also has social media accounts using the Marks, including the Twitter handle @rockthebells, the "Rock the Bells Festival" Facebook account, and the "Rock the Bells" MySpace account (collectively, the Social Media Accounts). Id. ¶ 25.

On or about June 12, 2018, Plaintiff sent a letter to Defendant requesting the transfer of the Domain Name and the Social Media Accounts. Id. ¶ 26. Having received no response, Plaintiff sent follow-up letters to Defendant on July 3, 2018, and July 30, 2018. Defendant never responded. Id.

Defendant was served with the Summons and the FAC on January 23, 2019. Dkt. 12. Defendant has not responded to the FAC or otherwise appeared or participated in this litigation. The

Clerk properly entered default against Defendant on March 4, 2019. Dkt. 15.

## II. Legal Standard

Rule 55(b)(2) permits the Court to enter a default judgment. The Court need not make detailed findings of fact in the event of default. Adriana Int'l Corp. v. Thoeren, 913 F.2d 1406, 1414 (9th Cir. 1990). On entry of a default, well-pleaded allegations in the complaint regarding liability are generally deemed to be admitted. DIRECTV, Inc. v Hoa Huynh, 503 F.3d 847, 851 (9th Cir. 2007). Allegations as to damages, however, must be proven. See TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917 (9th Cir. 1987).

The Court may consider several factors "in exercising discretion as to the entry of a default judgment includ[ing]: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

## III. Discussion

### A. Jurisdiction

Where, as here, "entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties." In re Tuli, 172 F.3d 707, 712 (9th Cir. 1999).

The Court has subject-matter jurisdiction over Plaintiff's trademark and cyberpiracy claims. As to personal jurisdiction, although it ordinarily is a defense that may be waived, it may not be presumed where a plaintiff seeks default judgment. See id. at 712 ("A judgment entered without personal jurisdiction over the parties is void."). The Court has personal jurisdiction because Defendant is a California corporation. See Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 924 (2011) (identifying place of incorporation as a basis for the exercise of general jurisdiction).[1]

**B.     The Eitel Factors Weigh in Favor of Granting Default Judgment**

**1.     Prejudice to Plaintiff**

Plaintiff would be prejudiced by a denial of his motion. Defendant cannot escape liability by refusing to participate in the judicial process and Plaintiff has incurred expenses in prosecuting this action.

**2.     Merits of Substantive Claims and Sufficiency of Complaint**

a.     Trademark Infringement, False Designation of Origin, and Unfair Competition Claims

The Lanham Act creates civil liability for "[a]ny person who, on or in connection with any goods or services . . . uses in commerce any word . . . which . . . is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin,

---

[1] That a corporation is suspended under California law does not protect the corporation from a default judgment. See Grell v. Laci Le Beau Corp., 73 Cal. App. 4th 1300, 1306 (1999).

sponsorship, or approval of his or her goods, services, or commercial activities by another person." 15 U.S.C. § 1125(a)(1)(A). Plaintiff has adequately pleaded all necessary elements of false designation of origin. He alleges that Defendant continues to use the Marks in commerce, via the Domain Name and the Social Media Accounts. FAC ¶¶ 24-25. And he sufficiently alleges that Defendant's uses of the Marks are likely to cause confusion, as Defendant's uses are related to hip-hop music and are "likely to cause confusion or mistake and to deceive purchasers as to Plaintiff's affiliation, connection, or association with, or approval or sponsorship of, Defendant, its businesses, and/or its services." Id. ¶ 28.

These allegations also satisfy the elements of California trademark infringement. See E. & J. Gallo Winery v. Pasatiempos Gallo, S.A., 905 F. Supp. 1403, 1415 (E.D. Cal. 1994) (citing Golden Door, Inc. v. Odisho, 646 F.2d 347, 349 (9th Cir. 1980)) ("[T]he Lanham Act's 'likelihood of confusion' standard applies equally to claims under California law."). They also satisfy the elements of Plaintiff's Section 17200 action, as that provision "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co., 20 Cal. 4th 163, 180 (1999) (quotation marks omitted); see also Century 21 Real Estate Corp. v. Sandlin, 846 F.2d 1175, 1180 (9th Cir. 1988) ("Prevailing on a state trademark infringement claim also entails prevailing on the state unfair competition claim . . . .").

    b. <u>Cyberpiracy Claim</u>

To prevail on his cyberpiracy claim under 15 U.S.C. § 1125(d), Plaintiff must prove that: "(1) the defendant registered, trafficked in, or used a domain name; (2) the domain name is identical or confusingly similar to a protected mark owned by the plaintiff;

5

and (3) the defendant acts with 'bad faith intent to profit from that mark.'" DSPT Int'l, Inc. v. Nahum, 624 F.3d 1213, 1218-19 (9th Cir. 2010) (quoting 15 U.S.C. § 1125(d)(1)(A)). Section 1125(d)(1)(B)(i) lists various factors a court may consider in determining whether a person has a bad faith intent.

Plaintiff alleges that Defendant registered, trafficked in, or used the Domain Name, which is identical to Plaintiff's Marks. FAC ¶¶ 24, 44-45. As to the third element, Plaintiff has sufficiently alleged that Defendant acted in bad faith. Id. ¶ 43. Defendant continues to use the domain name despite the fact that its registered rights in the Marks have been cancelled. Id. ¶¶ 14-22. The mark bears no resemblance to Defendant's legal name (Guerilla Union). Id. ¶ 4. And Defendant is not making a bona fide noncommercial or fair use of the Marks on the Domain Name, but has rather parked the website in an apparent attempt to continue collecting passive advertising revenue. Id. ¶ 24. Plaintiff has adequately pleaded the necessary elements of his cyberpiracy claims, which appear meritorious.

These factors weigh in favor of granting default judgment.

### 3.    **Sum of Money at Stake**

The Court must "assess whether the recovery sought is proportional to the harm caused by defendant's conduct." Landstar Ranger, Inc. v. Parth Enters., Inc., 725 F. Supp. 2d 916, 921 (C.D. Cal. 2010). Here, Plaintiff does not seek monetary damages, but rather only injunctive relief—the transfer of the Domain Name and the Social Media Accounts. This factor weighs in favor of granting default judgment.

### 4. Possibility of Factual Dispute, Excusable Neglect, and Policy Favoring Decision on the Merits

By failing to appear in this action, Defendant has chosen not to dispute the accuracy of Plaintiff's factual allegations. The likelihood of excusable neglect is slight: Defendant was served with the Summons and the Complaint on January 23, 2019 and has not responded. See Dkt. 12. The policy favoring decisions on the merits does not weigh against entry of default judgment where, as here, Defendant's failure to appear has made a decision on the merits impossible.

## C. Injunctive Relief

Plaintiff seeks an injunction requiring Defendant to transfer the Domain Name and the Social Media Accounts to Plaintiff. Mot. at 19-20; FAC, Prayer for Relief ¶¶ 5-6. He also seeks an order: (1) requiring Defendant to provide Plaintiff with all email addresses collected through the Domain Name; (2) enjoining Plaintiff from any future use of the Marks; and (3) requiring Defendant to deliver to Plaintiff for destruction all items in Defendant's possession bearing the Marks (or any logo that is confusingly similar to the Marks).

For claims of cyberpiracy, 15 U.S.C. § 1125(d) expressly provides that in a civil action involving the "use of a domain name" a court may order "the transfer of the domain name to the owner of the mark." 15 U.S.C. § 1125(d)(1)(C). Accordingly, the Court ORDERS Defendant to transfer the Domain Name to Plaintiff.

Plaintiff's additional requests for injunctive relief do not squarely fall under 15 U.S.C. § 1125(d)(1)(C).[2]  Nevertheless, the Court also has the "power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, . . . to prevent a violation under subsection (a), (c), or (d) of section 1125 of this title."  15 U.S.C. § 1116.  "Injunctive relief is appropriate when a party demonstrates '(1) that it has suffered irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.'"  N. Cheyenne Tribe v. Norton, 503 F.3d 836, 843 (9th Cir. 2007) (quoting eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006)).

The Court finds Plaintiff's requested injunctive relief is appropriate.  First, there is a likelihood of irreparable harm in the form of "damages to his trademarks, business reputation, and goodwill."  FAC ¶ 46.  Second, the Court doubts legal remedies are adequate to compensate for this harm.  See Century 21, 846 F.2d at 1180 ("Injunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement.").  Third, the Court finds that the equities favor injunctive relief.  And fourth, injunctive relief would not disserve the public interest, as it would protect the public from likely confusion.

Defendant is ORDERED to transfer the Social Media Accounts to Plaintiff, and to provide Plaintiff with all email addresses it has

---

[2] The Court finds that "domain name" as used in 15 U.S.C. § 1125(d)(1)(C) does not include the Social Media Accounts.

collected through use of the Domain Name. Defendant is also permanently enjoined and restrained from:

a. Manufacturing, transporting, promoting, importing, advertising, publicizing, distributing, offering for sale, or selling any goods or services offered under the Marks, or any other mark, name, symbol, or logo, which is likely to cause confusion or to cause mistake or to deceive persons into the erroneous belief that any goods or services that Defendant caused to enter the stream of commerce or any of Defendant's commercial activities are sponsored or licensed by Plaintiff, are authorized by Plaintiff, or are connected or affiliated in some way with Plaintiff or his Marks;

b. Manufacturing, transporting, promoting, importing, advertising, publicizing, distributing, offering for sale, or selling any goods or services offered under the Marks or any other mark, name, symbol, or logo that is a copy or colorable imitation of, incorporates, or is confusingly similar to the Marks;

c. Implying Plaintiff's approval, endorsement, or sponsorship of, or affiliation or connection with, Defendant's goods, services, or commercial activities or engaging in any act or series of acts which, either alone or in combination, constitutes unfair methods of competition with Plaintiff and from otherwise interfering with or injuring the Marks or the goodwill associated therewith;

d. Representing or implying that Defendant is in any way sponsored by, affiliated with, or licensed by Plaintiff; or

e. Knowingly assisting, inducing, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in paragraphs (a) to (d) above.

Finally, Defendant is ORDERED to deliver to Plaintiff for destruction all items in Defendant's possession bearing the Marks (or any logo that is confusingly similar to the Marks).

## IV. Conclusion

Plaintiff's motion for default judgment is GRANTED.

Plaintiff is directed to submit a proposed judgment consistent with this Order.

IT IS SO ORDERED.

Date: April 8, 2019

_____
Dale S. Fischer
United States District Judge